U.S. DISTRICT COURT
SAVANNAH

2014 MAR 21 PM 1:22

CLERK _____ B.W.t
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

QUEEN E. PARKER,          )
                          )
     Plaintiff,           )
                          )
v.                        )     CASE NO. CV412-315
                          )
ECONOMIC OPPORTUNITY FOR  )
SAVANNAH-CHATHAM COUNTY AREA, )
INC.; JOHN H. FINNEY; and )
TERRY TOLBERT;            )
                          )
     Defendants.          )
                          )

## O R D E R

Before the Court are Defendants Economic Opportunity for Savannah-Chatham County Area ("EOA"), John H. Finney, and Terry Tolbert's Motion for Summary Judgment (Doc. 35) and Plaintiff Queen E. Parker's Motion for Partial Summary Judgment (Doc. 39). For the following reasons, Defendants' motion is **GRANTED** and Plaintiff's motion is **DENIED**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case involves allegations of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and improper retaliation in violation of Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12131-12165, against Defendant EOA and two of its managers—Defendants Finney and

Tolbert.[1] According to Plaintiff, Defendant Tolbert rated Plaintiff in the highest possible category on every employee performance evaluation since 2006.[2] (Doc. 48 at 3.) In 2010, Plaintiff[3] approached Defendant Tolbert about submitting a request to the City of Savannah for two parking spaces in front of Defendant EOA's office to be designated for handicapped parking. (Id. at 4.) Defendant EOA already had two designated handicapped parking spaces in its parking lot, located behind the EOA office. (Id.) However, Defendant Tolbert gave Plaintiff permission to make the request because he thought it a good idea to have additional handicapped parking available at the front of the building, closest to the ramp for handicapped access. (Id.)

The city granted Plaintiff's request and designated two parking spaces in front of Defendant EOA's building for

---

[1] As it must at this stage, the Court construes the facts in the light most favorable to Plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). As the Court has used only Plaintiff's factual account in ruling on the parties' requests for summary judgment, Plaintiff's Motion to Strike (Doc. 49) is **DISMISSED AS MOOT.**

[2] Presumably, this is when Plaintiff began her employment with Defendant EOA. (Doc. 48 at 3.)

[3] Plaintiff is physically disabled and possesses a handicapped parking decal. (Doc. 48 at 3.) Because Plaintiff makes no allegations that she was discriminated against on the basis of any actual or perceived disability, Plaintiff's physical disability is immaterial to this case.

handicapped parking. (Id. at 4-5.) According to Plaintiff, the Director of Traffic for the City of Savannah informed her that Defendant EOA would have to monitor the parking spaces to ensure that only authorized individuals are parking in those spaces. (Id. at 5.) Plaintiff relayed this requirement to Defendant Tolbert, who then assigned that responsibility to two of Defendant EOA's employees—Messrs. Solomon and Johnson. (Id.)

Sometime after the spaces were designated for handicapped parking, Plaintiff began questioning her fellow employees' unauthorized uses of the handicapped spaces. (Id. at 6.) In addition, Plaintiff voiced her complaints to Defendants Finney and Tolbert. (Id.) On at least one occasion, Defendant Tolbert directed an offending EOA employee to move her vehicle from a handicapped space. (Id. at 6-7.)

On May 1, 2012, Plaintiff was preparing for an upcoming meeting with a handicapped client of Defendant EOA. (Id. at 7.) The client requested that a handicapped parking space be available upon her arrival. In trying to meet the client's request, Plaintiff checked on the availability of handicapped parking in the spaces surrounding Defendant EOA's office, both in the parking lot and along the street. (Id.) All spaces being occupied,

3

Plaintiff then attempted to determine if any of those cars were illegally parked in the handicapped spaces. (Id.)

Plaintiff's investigation revealed that one vehicle parked along the street was displaying a handicapped placard. (Id.) She then attempted to cross-reference the name on the handicapped placard with Defendant EOA's visitor sign-in-sheet. (Id. at 8.) After determining the name was not in the register, Plaintiff made inquiries at the reception desk concerning the owner of the vehicle. (Id.) Eventually, a fellow EOA employee was identified as the owner of the vehicle. (Id.) In addition, Plaintiff learned that the handicapped parking placard was issued in the name of the employee's son. (Id.)

Armed with this information, Plaintiff sought out the offending employee and discovered that the employee was not disabled and that the employee's son had not accompanied her to work. (Id.) In light of this discovery, Plaintiff asked the employee to move her car from the handicapped parking space. (Id.) According to Plaintiff, the employee refused and "said something 'offensive' and 'racial.'" (Id.) Based on this response, Plaintiff deemed it pointless to continue the conversation and returned to the reception desk. (Id.)

Upon her return, Plaintiff summoned Defendant Tolbert to discuss the parking issue. (Id. at 9.) After explaining the situation, Defendant Tolbert informed Plaintiff he was busy, had more important things to do, and that it was an issue for the police department. (Id. at 9-10.) According to Plaintiff, Defendant Tolbert told her to "do what you've got to do," to which Plaintiff responded that she was going to call 911. (Id. at 10.)

Following this discussion, Plaintiff called the non-emergency number for Savannah Police, identified herself as a concerned citizen, and informed the operator that an unauthorized individual was parked in a handicapped parking space in front of Defendant EOA's office. (Id. at 11.) Plaintiff returned to her office and waited to be informed of law enforcement's arrival. (Id.) After an hour without Plaintiff being aware of any police response to her call, Plaintiff noticed that the vehicle was still parked in the handicapped parking space. (Id.) In light of the unchanged circumstances, Plaintiff decided to place a second call to law enforcement. (Id.)

Eventually, a resource officer responded to the scene and informed Plaintiff that she assumed the handicapped placard belonged to the driver of the vehicle. (Id.) In response, Plaintiff informed the resource officer that the

placard did not belong to the driver of the vehicle. (Id.)
However, the officer still questioned her own authority to
force the driver to move the vehicle in light of the
validly displayed handicapped placard. (Id.)

Unsatisfied with this response, Plaintiff asked to
speak to the resource officer's supervisor—Officer Coates.
(Id. at 11-12.) Plaintiff related her position to Officer
Coates, telling her that Plaintiff would like to have the
vehicle "relocated elsewhere." (Id. at 12.) At Officer
Coates's request, Plaintiff attempted to bring the
offending employee outside to discuss the situation. (Id.)
However, the employee would not leave the building. (Id.)
Officer Coates then asked to speak to the employee's
supervisor, who in turn contacted her own supervisor.
(Id.) Sometime during this back-and-forth, the offending
employee moved her vehicle. (Id. at 12-13.)

Meanwhile, Defendant Finney received a phone call
informing him that Plaintiff was involved in a dispute at
the EOA building. (Id. at 13.) Upon his arrival,
Defendant Finney inquired of Officer Coates as to the
situation. (Id.) Officer Coates informed him that the
police were responding to a call concerning a dispute over
handicapped parking at the EOA. (Id. at 13-14.) Based on
the information provided by police, Defendant Finney

immediately suspended Plaintiff from her employment. (Id. at 14.)

Following the suspension, Defendant Finney investigated the incident. (Id.) Ultimately, Defendant Finney terminated Plaintiff's employment on May 4, 2012— three days following the handicapped parking incident. (Id. at 14-15.) Defendant Finney stated that he terminated Plaintiff's employment because she called the police concerning the handicapped parking space. (Id.)

After exhausting her administrative appeals and obtaining a timely right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed suit in this Court. In her complaint, Plaintiff alleges that Defendants violated the anti-retaliation provision of the ADA, 42 U.S.C. §§ 12131-12165, when they terminated her employment. (Doc. 1 ¶¶ 73-78.) In addition, Plaintiff brings a claim against Defendant EOA for gender discrimination in employment, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.[4] (Id. ¶¶ 79-83.)

---

[4] In her complaint, Plaintiff also brought claims under 42 U.S.C. § 1983 for violations her right to free speech (Doc. 1 ¶¶ 63-72) and her right to be free from gender discrimination (id. ¶¶ 84-88). In her response to Defendants' Motion for Summary Judgment, Plaintiff concedes that these claims fail because Defendants were not acting

7

In their Motion for Summary Judgment, Defendants argue that Plaintiff's Title VII gender discrimination claim fails because she is unable to identify other similarly situated male employees whom were treated differently. (Doc. 37 at 19-22.) In addition, Defendants contend that Plaintiff's retaliation claims fail because both Defendant EOA was not engaged in an employment practice made unlawful under the ADA (id. at 24-25) and Plaintiff lacked an objectively reasonable belief that Defendant EOA was engaged in conduct made unlawful under the ADA (id. at 25-26). In her response, Plaintiff identifies two allegedly valid male comparators—Messrs. Willie Brown and Brian Orrico—that were treated more favorably after committing acts of insubordination. (Doc. 48 at 31-36.) In addition, Plaintiff contends that Defendant EOA's actions were violations of the ADA (id. at 18-20) and that her subjective belief that Defendant EOA was engaged in conduct made unlawful by the ADA was objectively reasonable (id. at 20-30).

---

under color of state law. (Doc. 48 at 3.) Therefore, these claims are **DISMISSED** and need not be further discussed.

## I.  SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought."  Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The substantive law governing the action determines whether an element is essential.  DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears
> the initial responsibility of informing the
> district court of the basis for its motion, and
> identifying those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, which it believes
> demonstrate the absence of a genuine issue of
> material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. PLAINTIFF'S TITLE VII GENDER DISCRIMINATION CLAIM

In her complaint, Plaintiff brought a claim against Defendant EOA for gender discrimination in violation of Title VII. (Doc. 1 ¶¶ 79-83.) In their Motion for Summary Judgment, Defendants argue that Plaintiff's gender discrimination claim fails because she is unable to point to a similarly situated male employee who engaged in the same conduct while receiving no discipline. (Doc. 37 at 19-23.) In response, Plaintiff identifies Messrs. Brown and Orrico as similarly situated male co-workers who were not terminated for allegedly similar violations. (Doc. 48 at 31-36.)

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of unlawful gender discrimination by presenting direct, circumstantial, or statistical evidence of discrimination. Underwood v. Perry Cnty. Comm'n, 431 F.3d 788, 793 (11th Cir. 2005). To assess a disparate treatment claim[5] based only on circumstantial evidence, such

---

[5] Plaintiff's claim is one of disparate treatment—Defendant EOA treated Plaintiff differently based on her gender. See

11

as Plaintiff's claim in this case, the Court must employ the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Brooks v. Cnty. Comm's of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006). Under this test, a plaintiff must establish a prima facie case of gender discrimination by proving four elements: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) similarly situated employees outside of the plaintiff's protected class were treated more favorably; and (4) she was qualified for the position. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). If a plaintiff can demonstrate the elements of a prima facie case, then a burden of production falls to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Alexander v. Fulton Cnty., 207 F.3d 1303, 1336 (11th Cir. 2000). If the employer articulates a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the employer's stated reason was a pretext for discrimination. Id. At this point, should the plaintiff fail to establish the presence of a genuine issue of material fact that the

---

Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

employer's reason was merely pretextual, then the employer is entitled to summary judgment in its favor. Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004).

In their motion, Defendants only disputed one element of Plaintiff's prima facie case: whether a similarly situated employee outside of Plaintiff's protected class was treated more favorably. (Doc. 37 at 19-23.) In response, Plaintiff identified Messrs. Brown and Orrico as valid comparators. (Doc. 48 at 31-36.) After reviewing the record in this case and taking the facts in the light most favorable to Plaintiff, the Court concludes that neither Mr. Brown nor Mr. Orrico is a similarly situated employee and, as a result, Plaintiff is unable to establish a prima facie case of gender discrimination.

To determine whether an employee is similarly situated, the Court must look at whether both the plaintiff and the employee engaged in or were accused of the same conduct, but were disciplined by their employer in different fashions. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998)). When assessing the similarity of employees subjected to discipline, the nature of the offenses necessitating discipline and the types of punishments meted out are the

prime analytical factors. Id. In this circuit, both the quantity and quality of the comparator's misconduct must be nearly identical so that courts do not second guess an employer's human resources decision. Id. While "exact correlation is neither likely nor necessary, [] the cases must be fair congeners," Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 64 (1st Cir. 2004), to prevent "confusing apples with oranges," Maniccia, 171 F.3d at 1368.

Taking the facts in the light most favorable to Plaintiff, this Court is unable to conclude that the quality and quantity of either Messrs. Brown's or Orrico's misconduct was sufficiently similar to Plaintiff's such that either could be considered a valid comparator. With respect to Mr. Brown, he and Plaintiff performed two entirely different job functions. While Plaintiff's position as a housing counselor required her to work with individual clients, Mr. Brown was employed in a management capacity as Director of the Tom Austin House. (Doc. 48 at 31.) However, even ignoring the vast differences in the positions held by Plaintiff compared to Mr. Brown, the type

and severity of Mr. Brown's misconduct is sufficiently dissimilar to preclude his use as a valid comparator.

According to Plaintiff, Mr. Brown failed to timely complete assigned tasks on several occasions and routinely ignored "critical criticisms." (Id. at 32.) As a result, Defendant Tolbert gave Mr. Brown a very low rating in two areas during Mr. Brown's 2011 performance evaluation. (Id.) Plaintiff points out that Mr. Brown was never reprimanded, suspended, or terminated for these shortcomings. (Id. at 32-33.)

It is clear, however, that Plaintiff's misconduct is of a markedly different nature than Mr. Brown's. While Defendant Tolbert characterized both Plaintiff's and Mr. Brown's conduct as insubordinate,[6] the nature of the underlying conduct is extremely dissimilar. Mr. Brown was failing in his role as a manager and not performing assigned tasks. Plaintiff was terminated for calling

---

[6] In her response, Plaintiff attempts to use Mr. Brown as a comparator because they were both guilty of insubordination. (Doc. 48 at 31.) Simply because Defendant EOA described both Plaintiff's and Mr. Brown's conduct as insubordinate does not render their individual conduct as comparable. It is the individualized conduct of both employees that must be sufficiently similar when compared, not the label management elected to ascribe to that conduct. As outlined below, a simple review of Mr. Brown's conduct easily reveals it to be so dissimilar as to preclude Plaintiff's use of Mr. Brown as a valid comparator for her Title VII gender discrimination claim.

police, during business hours, about a fellow employee who was possibly illegally parked in a handicapped space. Indeed, Plaintiff's conduct involved investigating parking lots, searching for the owner of a vehicle, approaching fellow employees about their alleged improper parking, calling the police twice, disturbing Plaintiff's supervisor, and much more. Unlike Mr. Brown's conduct, Plaintiff's actions severely disturbed the working environment of Defendant EOA. Both the quantity and quality of Plaintiff's conduct is vastly different from Mr. Brown's. As a result, the Court does not consider Mr. Brown to be a valid comparator.

Plaintiff's attempt to utilize Mr. Orrico as a valid comparator suffers from the same fatal flaw. Even assuming Plaintiff and Mr. Orrico held similar positions with Defendant EOA,[7] the type of misconduct committed by Mr. Orrico is too dissimilar from Plaintiff's for his use as a valid comparator. According to Plaintiff, Mr. Orrico was given a warning for insubordination. (Id. at 35-36.) However, Plaintiff has failed to provide any detail as to the nature of Mr. Orrico's conduct that prompted the warning. As a result, the Court has no means by which it

---

[7] The Court notes the rather generous nature of this assumption in light of Mr. Orrico's employment as a "Maintenance/Security Guard." (Doc. 37 at 22.)

can conclude that the type of misconduct committed by Mr. Orrico is sufficiently similar to Plaintiff's actions such that he could be considered a valid comparator.

Plaintiff also relies on a warning given to Mr. Orrico for his use of an inappropriate word in the presence of an EOA client. (Id. at 36.) In Plaintiff's estimation, Mr. Orrico is a valid comparator because he was only suspended without pay for his "embarrassing and disgraceful" conduct,[8] while Plaintiff's actions resulted in her termination. (Id.) Again, both the quantity and quality of Plaintiff's conduct is sufficiently dissimilar to Mr. Orrico's such that he cannot be considered a valid comparator. Because Plaintiff is unable to identify a similarly situated employee outside of Plaintiff's protected class that was treated more favorably, Defendants are entitled to summary judgment on this claim.

## II. PLAINTIFF'S AMERICANS WITH DISABILITIES ACT RETALIATION CLAIM

Plaintiff has brought a retaliation claim under the ADA based on Defendants' decision to terminate her employment. (Doc. 1 ¶¶ 73-78.) The anti-retaliation

---

[8] Again, Plaintiff attempts to use the label management ascribed to the misconduct to conclude that the misconduct was similar. As noted above, however, the proper focus is on the individualized actions of Plaintiff and the comparator, not the label placed on that conduct. See supra note 6.

17

provision of the ADA[9] provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 41 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse employment action; and (3) that there was a causal connection between the two events. E.g., Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1328 (11th Cir. 1998) (citing Steward v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997)). To establish a prima facie case of retaliation, a plaintiff must not only subjectively have a good-faith belief that her employer was engaged in unlawful conduct, but that belief must also be objectively reasonable. Little v. United Tech., 103 F.3d 956, 960 (11th Cir. 1997).

In their Motion for Summary Judgment, Defendants argue that their actions did not violate the ADA because

---

[9] Due to their similarity, ADA retaliation claims are assessed under the same framework used for retaliation claims arising under Title VII. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1328 (11th Cir. 1998).

18

Defendant EOA did not own or control access to the handicapped parking space, which was owned by the city. (Doc. 37 at 23-25.) In addition, Defendants contend that Plaintiff did not have an objectively reasonable, good-faith belief that Defendant EOA was engaged in unlawful discriminatory practices. (Id. at 25-26.) In response, Plaintiff maintains that Defendants' conduct actually violated the ADA. (Doc. 48 at 23-27.) Plaintiff also reasons that, even if Defendants did not violate the ADA, her retaliation claim survives because she held an objectively reasonable belief that Defendants' conduct was a violation of the ADA. (Id. at 20-30.)

Plaintiff's retaliation claim fails both because Defendant EOA was not engaged in conduct that violated the ADA and because any belief that Defendant EOA violated the ADA by failing to force its employee to move from a city-owned handicapped parking space is objectively unreasonable. While Plaintiff attempts to paint Defendant's actions as a violation of the ADA, the record establishes that the handicapped parking space at the center of this dispute was located on the street in front of Defendant EOA's office. There is no evidence in the record, other than Plaintiff's ipse dixit, that Defendant EOA was ultimately responsible for policing the use of this

parking space. While Defendant EOA may have been informed that they would have to monitor the handicapped spaces for illegal parking, the record does not establish that Defendant EOA was either required to report parking violations or possessed any authority to enforce parking regulations with respect to those spaces by removing illegally parked vehicles.

In this respect, Plaintiff's reliance on Cottrell v. J&D Liquor Gallery, Inc., 2010 WL 3906786 (D.N.J. Sept. 30, 2010) (unpublished), is entirely misplaced. In Cottrell, the defendant violated the ADA by failing to provide for the availability handicapped parking on its premises. Id. at *5. Dispositive in Cottrell was the fact that the defendant completely and routinely failed to keep unauthorized vehicles from parking in the handicapped designated spaces located in the parking lot, which was owned by the defendant. Id. at *5. In other words, the defendant in Cottrell was violating the ADA by effectively failing to provide any of the handicapped parking spaces required under the ADA. In this case, however, Defendant EOA provides handicapped parking in the lot behind its building. Even assuming Defendant EOA abrogated its responsibility to enforce parking restrictions with respect to the handicapped spaces on the street in front of its

office, Defendant EOA was not violating the ADA because the spaces behind their office provided the access to handicapped parking required under the ADA.

Moreover, the Court cannot conclude that Plaintiff held an objectively reasonable belief that Defendant EOA, or anyone else for that matter, was violating the ADA. Again, it is patently clear that these spaces were located along the street in front Defendant EOA's office. Basically, Plaintiff argues that it was reasonable for her to believe that Defendant EOA was violating the ADA by failing to force an employee to move her vehicle from a publically owned parking space despite the vehicle displaying a valid handicapped parking placard. Or, that Plaintiff reasonably thought that the employee was somehow violating the ADA by improperly parking in a handicapped parking space and it was Defendant EOA's responsibility to have the employee move her vehicle. Both scenarios are equally far-fetched and evidence the general lack of reasonableness regarding Plaintiff's belief that Defendant EOA's conduct violated the ADA.

Based on the lack of either any actual violation of the ADA or an objectively reasonable belief held by Plaintiff that Defendant EOA was violating the ADA, Plaintiff's ADA retaliation claim fails as a matter of law.

Therefore, Defendants are entitled to summary judgment on this claim. Because Defendants are entitled to summary judgment, Plaintiff's request for summary judgment in her favor with respect to her ADA retaliation claim must be denied.

## CONCLUSION

For the foregoing reasons, Defendants EOA, Finney, and Tolbert's Motion for Summary Judgment (Doc. 35) is **GRANTED**. As a result, Plaintiff Parker's Motion for Partial Summary Judgment (Doc. 39) must be **DENIED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this _21st_ day of March 2014.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA